# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:06-cr-00043-MR-WCM-4

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| KIMBERLY DAWN PALMER, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion Requesting Sentence Reduction Pursuant to 18 U.S.C. § 3582 Compassionate Release" [Doc. 242]; the Defendant's "Exhaustion Requirement/Compassionate Release" [Doc. 246]; the Defendant's letter regarding exhaustion of administrative remedies [Doc. 247]; the Government's Response to Defendant's "Exhaustion Requirement/Compassionate Release" [Doc. 248]; and the Defendant's Reply [Doc. 249].

## I. BACKGROUND

In September 2006, the Defendant Kimberly Dawn Palmer pled guilty to one count of conspiracy to manufacture and possess with intent to distribute methamphetamine. Thereafter, the Defendant absconded from

supervision and remained a fugitive for eight years. She was apprehended in Laredo, Texas in 2014 and was returned to this District. [Doc. 174]. The Court sentenced her to 168 months of imprisonment and a term of five years' supervised release. [Doc. 182]. She is currently housed at FPC Alderson, and her projected release date is March 21, 2026.[1]

In July 2020, the Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the ongoing COVID-19 pandemic. [Doc. 236]. Specifically, the Defendant argued that her underlying health conditions placed her at a higher risk for severe illness from COVID-19, and that her particular vulnerability to the illness was an extraordinary and compelling reason for an immediate sentence reduction to time served. [Id.]. The Government opposed the Defendant's motion [Doc. 237], and in September 2020, the Court entered an Order denying the Defendant's request. [Doc. 240].

In March 2021, the Defendant filed a second request for a compassionate release. [Doc. 242]. For grounds, the Defendant argued that "updated" statistical data about the global pandemic as well as her post-

---

[1] See https://www.bop.gov/inmateloc/ (last visited Sept. 21, 2021).

incarceration achievements warranted a reduction of her sentence to time served. [Id. at 1-2]. The Government opposed the Defendant's motion, arguing that she had not presented a sufficient reason to cause the Court to reconsider its previous denial of a similar motion. [Doc. 243]. In June 2021, the Court entered an Order construing the Defendant's motion as a new request for compassionate release and denying it without prejudice on the grounds that she had failed to demonstrate exhaustion of her administrative rights as required by 18 U.S.C. §3582(c)(1)(A). [Doc. 245].

In July 2021, the Defendant filed a document entitled "Exhaustion Requirement/Compassionate Release" explaining her efforts to pursue her request for compassionate release through the warden of her facility. [Doc. 246]. She subsequently supplemented this pleading with documentation indicating that the warden had denied her compassionate release request on July 1, 2021. [Doc. 247].

The Court ordered the Government to respond. [Text-Only Order entered July 16, 2021]. On August 5, 2021, the Government filed its Response, conceding that the Defendant had demonstrated the necessary exhaustion of remedies but otherwise opposing her request for compassionate release on the merits. [Doc. 248]. The Defendant

subsequently filed a Reply. [Doc. 249]. Having been fully briefed, this matter is now ripe for disposition.

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of her sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). As noted, the Government concedes that the Defendant has now complied with the exhaustion requirements of § 3582(c)(1)(A). Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must

4

also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the application notes to this policy statement set forth the various circumstances under which the Court can determine that "extraordinary and compelling reasons exist," including: the medical condition of the defendant, the age of the defendant, certain family circumstances, or other reasons. This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any*

extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant argues that her history of smoking places her at a significant risk of serious illness or death from COVID-19. [Doc. 242 at 9]. According to the Centers for Disease Control and Prevention ("CDC"), a history of smoking can increase a person's risk of severe illness from COVID-19.[2] The Defendant, however, has been fully vaccinated against the coronavirus. [See Doc. 243-1]. According to the CDC, vaccine effectiveness studies indicate that the mRNA COVID-19 vaccines can reduce the risk of serious illness among people who are fully vaccinated by 90 percent or more.[3] As such, the Defendant's history of smoking does not constitute an extraordinary and compelling to justify her early release.

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 21, 2021).

[3] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Sept. 21, 2021).

6

The Defendant also relies upon new data regarding the effect of the pandemic on the Bureau of Prisons, as well as information pertaining to conditions at FPC Alderson, to justify her immediate release. [Doc. 242].

While the Defendant takes issue with the measures taken by FPC Alderson, the Court finds that the BOP has taken significant measures to protect the health of its inmates during this pandemic. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, the BOP is in the process of vaccinating inmates, which will offer both inmates and staff further protection from the virus. Indeed, as of September 21, 2021, the Defendant's facility, FPC Alderson, has vaccinated 70 staff members and 312 inmates.[4] Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given BOP's efforts, the fact that the Defendant faces a slight risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief she

---

[4] See https://www.bop.gov/coronavirus/ (last visited Sept. 21, 2021).

requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

In her compassionate release request to the warden of FPC Alderson, the Defendant cited concerns about her aging mother caring for the Defendant's grandchildren as a basis for her request. [See Doc. 247-1]. There is no indication in the record, however, that the Defendant has any custodial rights to her grandchildren. In any event, the Defendant does not offer any evidence that her mother is near death or otherwise incapacitated such that she is incapable of providing for these children. Under these circumstances, the Defendant's concerns about her grandchildren are not extraordinary and compelling reasons to justify her immediate release.

Finally, the Defendant cites her efforts at post-sentencing rehabilitation as a factor weighing in favor of relief. [Doc. 242]. While the Defendant's efforts at rehabilitation are commendable, the Court continues to find that the relevant § 3553(a) factors weigh in favor of continued incarceration. As the Court previously noted in denying the Defendant's first motion for

8

compassionate release [Doc. 240], the Defendant has a history of being involved in a substantial drug conspiracy. She was convicted of possessing more than 500 grams of methamphetamine, and the PSR indicates that she could have been held responsible for distributing more than 1.5 kilograms. [Doc. 179 at 6]. The PSR also indicates that the Defendant possessed firearms in conjunction with her offense. [Id. at 7]. Additionally, the Defendant absconded from pretrial supervision and was a fugitive for several years, which indicates the Defendant's lack of respect for the law. [See id.]. Requiring the Defendant to serve her full sentence adequately reflects the seriousness of her offense, promotes respect for the law, avoids unwarranted sentencing disparities, and provides general deterrence to others who might commit similar crimes.

For all these reasons, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors weigh in favor of her continued incarceration.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion Requesting Sentence Reduction Pursuant to 18 U.S.C. § 3582 Compassionate Release" [Doc. 242] as supplemented by [Doc. 246] is **DENIED**.

**IT IS SO ORDERED.**

Signed: September 22, 2021

Martin Reidinger
Chief United States District Judge